IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 18-cv-02283-PAB-MEH

DAVID MONTGOMERY and
WILLIAM MONTGOMERY,

    Plaintiffs,

v.

MATTHEW GOSSELIN,

    Defendant.

## ORDER

    This matter is before the Court on the Recommendation of the United States Magistrate Judge [Docket No. 27] filed on June 25, 2019. The magistrate judge recommends that the Court grant Defendant's Motion to Dismiss [Docket No. 17] on the basis of qualified immunity. Docket No. 27 at 1, 15. Plaintiffs, proceeding *pro se*, filed a timely objection to the magistrate judge's recommendation on July 15, 2019. Docket No. 30.[1] Defendant filed a response to plaintiffs' objection on July 26, 2019, Docket No. 31, to which plaintiffs replied on August 9, 2019. Docket No. 32.

### I. BACKGROUND

    This case arises out of plaintiffs' encounter with defendant Matthew Gosselin, a police officer with the Westminster Police Department, on September 4, 2016. *See* Docket No. 7 at 4-6, ¶¶ 1-5. As summarized in more detail in the magistrate judge's

---

[1] On July 2, 2019, the Court extended the fourteen-day deadline for plaintiffs' objection to July 15, 2019. *See* Docket No. 29.

recommendation, plaintiffs were standing on opposite off-ramps of U.S. Route 36 in Westminster, Colorado, holding cardboard signs that said, "Change Comes In Many Forms," when they were approached by defendant who informed them that they were in violation of the city's anti-solicitation ordinance. *Id.*, ¶¶ 2-6. Defendant issued a verbal warning to plaintiff David Montgomery and a written citation to plaintiff William Montgomery, which was ultimately dismissed. *Id.* at 4-5, 9, 18, 25, ¶¶ 2, 9, 16, 22.

Plaintiffs filed this lawsuit on September 4, 2018. Docket No. 1. In their operative complaint, plaintiffs assert three claims: (1) retaliation against protected speech in violation of the First Amendment; (2) unreasonable seizure under the Fourth Amendment; and (3) retaliatory prosecution in violation of the First Amendment. *See* Docket No. 7 at 25, 27, 36. On February 5, 2019, defendant moved to dismiss all claims on the basis of qualified immunity. *See* Docket No. 17. On June 25, 2019, the magistrate judge recommended that the Court grant defendant's motion, finding that plaintiffs had not established the causal element of their First Amendment retaliation claim, Docket No. 27 at 7; failed to cite clearly established law showing that plaintiffs' detentions – which, according to the magistrate judge, did not rise above the level of investigative detentions – violated plaintiffs' rights under the Fourth Amendment, *id.* at 10-12; and failed to allege that defendant acted with malice in order to succeed on their malicious prosecution claim. *Id.* at 13-14.[2]

## II. STANDARD OF REVIEW

The Court must "determine de novo any part of the magistrate judge's disposition

---

[2]The magistrate judge construed plaintiffs' third claim for relief as a malicious prosecution claim under the Fourth Amendment. *See* Docket No. 27 at 12.

that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  An objection is "proper" if it is both timely and specific.  *United States v. One Parcel of Real Property Known as 2121 East 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996).

In the absence of a proper objection, the Court reviews the magistrate judge's recommendation to satisfy itself that there is "no clear error on the face of the record."[3]  Fed. R. Civ. P. 72(b), Advisory Committee Notes.

Because plaintiffs are proceeding *pro se*, the Court construes their filings liberally without acting as their advocate.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

## III.  ANALYSIS

Plaintiffs do not challenge the magistrate judge's recommendation as to their retaliation and malicious prosecution claims.  Regarding their claim for unreasonable seizure under the Fourth Amendment, plaintiffs contend that the magistrate judge erred by: (1) incorrectly concluding that defendant's detention of plaintiffs did not rise to the level of an arrest under the Fourth Amendment; and (2) holding that a reasonable officer in defendant's position would not have understood his conduct to be unlawful.  *See* Docket No. 30 at 1, 7-9.

### A.  Arrest Versus Investigative Detention

As relevant to plaintiffs' first argument, the magistrate judge determined that defendant's encounter with plaintiffs constituted investigative detentions under the

---

[3]This standard of review is something less than a "clearly erroneous or contrary to law" standard of review, Fed. R. Civ. P. 72(a), which in turn is less than a de novo review.  Fed. R. Civ. P. 72(b).

Fourth Amendment because there were no allegations that defendant used "any force or threat of force," his conversations with plaintiffs were "predominantly cordial," and the encounters were relatively brief – nine and nineteen minutes with David and William, respectively. Docket No. 27 at 9. Plaintiffs challenge the magistrate judge's legal conclusion on two grounds. First, they contend that defendant converted William's stop into an arrest for Fourth Amendment purposes by issuing a written citation.[4] Second, plaintiffs argue that defendant exceeded the scope of an investigatory stop because he (1) did not make any effort to determine whether plaintiffs had actually violated the anti-solicitation ordinance, Docket No. 30 at 5-6, and (2) "[i]ssuing warnings, even for a brief moment, is longer than is necessary to effectuate the purpose of either dispelling or confirming an officer's reasonable suspicion." *Id.* at 6 (internal quotation marks and brackets omitted). Neither of these arguments is persuasive.

As to the first, the Tenth Circuit has held that the "issuance of a citation, even under threat of jail if not accepted, does not rise to the level of a Fourth Amendment seizure." *Martinez v. Carr*, 479 F.3d 1292, 1299 (10th Cir. 2007). In *Martinez*, the plaintiff received a criminal misdemeanor citation for "resisting, evading or obstructing an officer" after he was involved in an altercation with law enforcement at a state fair. *Id.* at 1293-94 (internal quotation marks omitted). The plaintiff sued the issuing officer for unreasonable seizure under the Fourth Amendment; however, because the defendant was not involved in the plaintiff's initial detention, the case "present[ed] the

---

[4]Relatedly, plaintiffs argue that defendant's verbal warning to David was sufficiently coercive to constitute an "arrest" because David would have received a written citation had he refused to abide by defendant's orders. *See* Docket No. 32 at 10.

pure legal question whether the issuance of a misdemeanor citation requiring appearance at trial in lieu of arrest constitutes a 'seizure' for Fourth Amendment purposes." *Id.* at 1295. The Tenth Circuit held that it did not, relying in part on *Knowles v. Iowa*, 525 U.S. 113 (1998), in which the Supreme Court concluded that, "even after the issuance of a citation, a routine traffic stop is more analogous to a so-called '*Terry* stop' than to a formal arrest." *Martinez*, 479 F.3d at 1296 (quoting *Knowles*, 535 U.S. at 117). The Tenth Circuit reasoned that, "[a]s in *Knowles*, Officer Carr did not qualitatively alter the nature of Mr. Martinez's preexisting detention simply by issuing a citation, even under threat of jail if the citation was not accepted." *Id.*

While *Martinez* involves the preliminary question of whether conduct rises to the level of a seizure under the Fourth Amendment, the Tenth Circuit's reasoning supports a conclusion that the issuance of a citation is not sufficient, by itself, to elevate an investigatory detention into an arrest for Fourth Amendment purposes. *See Petrello v. City of Manchester*, 2017 WL 3972477, at *14-15 (D.N.H. Sept. 7, 2017) (holding, based on case law establishing that the issuance of a summons does not constitute a seizure, that the issuance of a summons does not elevate an investigatory stop to a detention requiring probable cause); *White v. City of Laguna Beach*, 679 F. Supp. 2d 1143, 1155 (C.D. Cal. 2010) (citing *Martinez* and observing that "[n]umerous courts have held that the mere issuance of a citation does not even constitute a seizure, let alone a formal arrest"). Other Tenth Circuit decisions confirm that issuing a verbal warning or citation is consistent with the scope and purpose of an investigatory detention. *See, e.g.*, *United States v. Burleson*, 657 F.3d 1040, 1045-50 (10th Cir.

5

2011) (holding that an officer did not exceed the scope of a *Terry* stop by conducting a warrants check on pedestrians after giving them a verbal warning); *United States v. Cervine*, 347 F.3d 865, 868 (10th Cir. 2003) ("An officer conducting a routine traffic stop may request a driver's license and vehicle registration, run a computer check, and issue a citation.").[5]

Plaintiffs' reliance on the concept of a "non-custodial arrest" does not alter this conclusion. *See* Docket No. 30 at 3-5. In the principal case plaintiffs cite, *People v. Bland*, 884 P.2d 312 (Colo. 1994), the Colorado Supreme Court construed a state statute "mandat[ing] the issuance of a notice or summons" as authorizing non-custodial arrest. *Id.* at 318. In doing so, the court distinguished between custodial arrests and non-custodial arrests, stating that "the temporary detention required to issue a penalty assessment notice after a defendant is arrested for a misdemeanor traffic offense" constitutes a non-custodial arrest if the defendant is to be released after the detention. *Id.*

While plaintiffs rely on *Bland* for the proposition that defendant's issuance of a citation converted William's detention to a non-custodial arrest, thereby triggering a probable cause requirement, *Bland* is inapposite. First, *Bland* was construing a state

---

[5]Although plaintiffs object to defendant's reliance on traffic-stop cases, *see* Docket No. 32 at 4-5, the Tenth Circuit has previously analogized between the motorist and pedestrian contexts for purposes of determining whether an officer's conduct exceeded the scope of an investigative detention. *See, e.g.*, *United States v. Villagrana-Flores*, 467 F.3d 1269, 1277 (10th Cir. 2006) (relying on traffic-stop cases to hold that an officer was justified in using the defendant's identity to perform a warrants check during a *Terry* stop); *see also, e.g.*, *Martinez*, 479 F.3d at 1296 (relying on *Knowles* in to conclude that the issuance of a citation did not transform a police encounter into a seizure under the Fourth Amendment).

statute, not determining whether the issuance of a citation elevates an investigative detention to an arrest requiring probable cause under the Fourth Amendment. *Cf. United States v. Gonzalez*, 763 F.2d 1127, 1130 n.1 (10th Cir. 1985) (holding that, notwithstanding state statute's use of the word "arrest" to "describe the events that occur when a police officer issues a speeding ticket to a violator," a routine traffic stop "is more in the nature of an investigative detention than a traditional arrest" for Fourth Amendment purposes). Second, to the extent *Bland* could be read to support such a conclusion, the Colorado Supreme Court's notion of a "non-custodial arrest" is inconsistent with federal law, which recognizes only three levels of police-citizen interactions under the Fourth Amendment: consensual encounters, investigative detentions, and arrests. *United States v. Coca*, 704 F. App'x 744, 747 (10th Cir. 2017) (unpublished); *see also* Daniel J. Steinbock*, The Wrong Line Between Freedom and Restraint: The Unreality, Obscurity, and Incivility of the Fourth Amendment Consensual Encounter Doctrine*, 38 San Diego L. Rev. 507, 512 & n.15 (2001) (discussing federal courts' recognition of three levels of police-citizen interactions for purposes of the Fourth Amendment – arrests, stops, and consensual encounters – and noting that some scholars have argued for "noncustodial arrests as a fourth category"). As the magistrate judge correctly explained, an arrest is "distinguished from an investigative detention by the involuntary, highly intrusive nature of the encounter," Docket No. 27 at 8 (quoting *Lundstrom v. Romero*, 616 F.3d 1108, 1120 (10th Cir. 2010)), not by the issuance of a verbal warning or citation. *Cf. Martinez*, 479 F.3d at 1296; *United States v. Leal-Feliz*, 665 F.3d 1037, 1043 (9th Cir. 2011) (noting that "Supreme Court case law

7

provides ample support in [various] contexts for distinguishing an arrest from a citation").[6]

Plaintiffs also argue that their detentions exceeded the scope of an investigative detention because defendant issued warnings and a citation without making any effort to "confirm or dispel" his suspicions that plaintiffs were engaging in illegal activity. Docket No. 30 at 5; *see Villagrana-Flores*, 467 F.3d at 1275 ("[T]he primary considerations bearing upon the reasonableness of a search and seizure are whether the officer's action was justified at its inception, and *whether it was reasonably related in scope to the circumstances which justified the interference in the first place*." (internal quotation marks omitted) (emphasis added)). As discussed above, however, warnings and citations do not "naturally exceed[ ] the scope of an investigative detention." Docket No. 30 at 5; *see Burleson*, 657 F.3d at 1045-50. To the extent plaintiffs argue that the stops were unlawful because defendant made no effort to investigate whether plaintiffs had violated the law, they construe the "investigative detention" label too narrowly. A police encounter does not exceed the scope of an investigative detention

---

[6]Plaintiffs' citation to *Gonzalez*, *see* Docket No. 32 at 5, is also unavailing. In that case, the Tenth Circuit held that an officer's "request to have [the] defendant accompany him to the police station, and once there . . . his request for consent to search [the] defendant's car" exceeded the scope of a permissible *Terry* stop detention. *Gonzalez*, 763 F.2d at 1131, 1133. In reaching that conclusion, the Tenth Circuit suggested that even the initial stop of the defendant may have constituted an "arrest" in a "technical sense" under the relevant New Mexico statutes because those statutes "use[d] the word 'arrest' to describe the events that occur when a police officer issues a speeding ticket to a violator." *Id.* at 1130 n.1. Notwithstanding this statutory language, however, the court reasoned that a stop "to issue a traffic summons for a minor speeding infraction" is, "for Fourth Amendment purposes[,] . . . more in the nature of an investigative detention than a traditional arrest." *Id.* Thus, *Gonzalez* undermines plaintiffs' position that the issuance of a citation converts an investigative detention into an arrest under the Fourth Amendment.

simply because an officer initiates the stop already knowing information that establishes the person has committed a crime. *See Burleson*, 657 F.3d at 1042 (officer initiated *Terry* stop because pedestrians were "walking in the middle of the street, which [was] a violation of a New Mexico statute and a Roswell ordinance"). Moreover, an officer is permitted to engage in certain information-gathering activities not directly related to determining whether an individual was actually engaged in the suspected criminal conduct that initially prompted the stop. *See, e.g., id.* at 1048 (holding that officer did not impermissibly prolong an investigative detention by conducting a warrants check).

As alleged in this case, defendant informed plaintiffs that they were not permitted to solicit on the side of the roadway, requested their identification, and issued William a written citation for violating Westminster's anti-solicitation ordinance. *See* Docket No. 7 at 9-11, 12, 14-21, ¶¶ 9, 13, 16. Nothing about this conduct was inconsistent with the scope and purpose of an investigative detention.[7] In addition, the magistrate judge correctly applied Tenth Circuit case law in holding that defendant's encounters with plaintiffs were not "highly intrusive." *See* Docket No. 27 at 9. The Court therefore concludes the magistrate judge did not err in holding that the encounters constituted

---

[7]As defendant correctly notes, the mere fact that the citation alleged the existence of "probable cause" does not, by itself, "elevate the encounter" to an arrest. Docket No. 31 at 3; *see Gallegos v. City of Colorado Springs*, 114 F.3d 1024, 1031 n.7 (10th Cir. 1997) ("Although an officer's subjective intent is a factor that may be considered in determining whether a stop has escalated into an arrest, subjective intent is not determinative." (internal citations omitted)). And plaintiffs may not amend their allegations by stating, in their objection to the magistrate judge's recommendation, that defendant "officially announc[ed]" he was placing William under "non-custodial arrest." Docket No. 30 at 5, ¶ 4; *see Nagim v. Walker*, No. 10-cv-02973-WYD-KLM, 2011 WL 1743431, at *2 (D. Colo. May 6, 2011) ("[N]ew claims or allegations can only be added through the filing of a motion to amend the complaint which must be granted by the Court.").

investigative detentions under the Fourth Amendment.

### B.  Clearly Established Law

In addition to holding that plaintiffs were not arrested for purposes of the Fourth Amendment, the magistrate judge determined that there was no clearly established law showing defendant's conduct to be unlawful.  *See* Docket No. 27 at 11-12.  The magistrate judge framed the relevant inquiry as whether "it was clearly established at the time of the[] events that an officer who observes an individual holding a sign adjacent to a highway – without more – does not have reasonable suspicion to conduct an investigative detention for a violation of an anti-solicitation ordinance."  *Id.* at 11.

In their objection, plaintiffs argue that defendant should have known his conduct was unlawful because he did not obtain any information to support the "accusations that either Plaintiff had been seeking 'employment, business, contributions, or sales of any kind,'" as required under the Westminster anti-solicitation ordinance.  Docket No. 30 at 8; *see also* Docket No. 32 at 7-9 (arguing that defendant did not obtain any information "necessary to believe" that William had been engaging in unlawful solicitation).[8]  The

---

[8]The Westminster anti-solicitation ordinance provides, in relevant part:

> (B) It shall be unlawful for any person to solicit employment, business, contributions, or sales . . . from the occupant of any vehicle traveling upon any street or highway when such solicitation or collection either:
>
> (1) Causes the person performing the activity to enter onto the traveled portion of a street or highway.
>
> (2) Involves the person performing the activity to be located upon any median area that separates traffic lanes for vehicular travel in opposite directions.

crux of plaintiffs' argument appears to be that defendant never ascertained the content of plaintiffs' signs. *See* Docket No. 32 at 9 ("Because information such as the content of Plaintiff's William's sign, or his possible intentions therein of holding it could have been easily obtained . . ., the Defendant was unreasonable in not making those inquiries." (internal quotation marks, brackets, and emphasis omitted).[9] But none of the cases plaintiffs cite would have made clear to a reasonable officer in defendant's position that "observ[ing] an individual holding a sign adjacent to a highway" does not, without more, give rise to "reasonable suspicion to conduct an investigative detention

---

> (3) The person performing the activity is located such that vehicles cannot move into a legal parking area to safely conduct the transaction.
>
> (C) It shall be unlawful for any person to solicit or attempt to solicit employment, business, contributions or sales of any kind, or collect monies for the same, from the occupant of any vehicle on any highway included in the interstate system, including any entrance to or exit from such highway.

Westminster, Colo. Code of Ordinances § 9-4-1(B)-(C).

[9]In their reply brief, plaintiffs also argue that defendant did not observe "William 'step out into, be located upon a median area of, or be located such that vehicles cannot move into a legal parking area of' any public roadway," or "stand on the side of 'any highway included in the interstate system.'" Docket No. 32 at 8. Because plaintiffs did not raise this argument in their initial objection to the magistrate judge's recommendation, the Court need not consider it. *See White v. Chafin*, 862 F.3d 1065, 1067 (10th Cir. 2017) (holding that appellant waived his "contention by waiting to present it for the first time in his reply brief"). In any event, plaintiffs' argument is inconsistent with their statement that they are not challenging the "initial 'stop' of Plaintiff William, and the subsequent purported 'investigative detention' of him *leading up to* the issuance of the citation." Docket No. 32 at 2. Even if plaintiffs were challenging William's initial detention, the Court is unaware of any case law establishing that an officer must observe a person actually step into a roadway in order to have a reasonable suspicion that the person is violating an anti-solicitation ordinance similar to § 9-4-1.

11

for a violation of an anti-solicitation ordinance." Docket No. 27 at 11; *see Cortez v. McCauley*, 478 F.3d 1108, 1119-20 (10th Cir. 2007) (holding that officers lacked probable cause for arrest where the only information suggesting that the plaintiff had engaged in criminal conduct was the "double-hearsay statement of a nurse who had no personal knowledge of the actual facts" (emphasis omitted)); *BeVier v. Hucal*, 806 F.2d 123, 126-27 (7th Cir. 1986) (holding that officers lacked probable cause for arrest where they had no information to suggest that the plaintiffs knowingly or willfully neglected their children); *United States v. Brignoni-Ponce*, 499 F.2d 1109, 1112 (9th Cir. 1974) (holding that officer lacked the authority to stop a vehicle absent a "founded suspicion" that its passengers were illegal aliens). While *Cortez* and *BeVier* stand for the general proposition that an officer must conduct a reasonable investigation to ascertain facts supporting probable cause before an arrest, *see Cortez,* 478 F.3d at 1116-17; *BeVier*, 806 F.2d at 127-28, the magistrate judge correctly observed that "clearly established law may not be defined at a high level of generality." Docket No. 27 at 10 (quoting *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019)). This is "especially important in the Fourth Amendment context" because the concepts of probable cause and reasonable suspicion are "incapable of precise definition" and "officers will often find it difficult to know how the general standard[s] . . . appl[y] in the precise situation encountered." *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (internal quotation marks omitted).

Because plaintiffs have not identified – and the Court has not found – any case holding that an officer who observes an individual holding a cardboard sign adjacent to

a highway lacks a reasonable suspicion that the individual is violating an anti-solicitation ordinance, defendant is entitled to qualified immunity. *See Wesby*, 138 S. Ct. at 590 (emphasizing the need, for purposes of qualified immunity, "to identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment" (internal quotation marks and ellipsis omitted)).

For the foregoing reasons, plaintiffs' objection to the magistrate judge's recommendation will be overruled.

## IV. UNOBJECTED-TO RULINGS

As for the unobjected-to portions of the recommendation, in the absence of a proper objection, the district court may review a magistrate judge's recommendation under any standard it deems appropriate. *See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991); *see also Thomas v. Arn,* 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings"). In this matter, the Court has reviewed the unobjected-to portions of the recommendation and satisfied itself that there is "no clear error on the face of the record." Fed. R. Civ. P. 72(b), Advisory Committee Notes.

## V. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that plaintiffs' Objection to Magistrate Judge's Recommendation to Grant Defendants' Motion to Dismiss [Docket No. 30] is **OVERRULED**. It is further

**ORDERED** that the Recommendation of the United States Magistrate Judge

[Docket No. 27] is **ACCEPTED**. It is further

ORDERED that Defendant's Motion to Dismiss [Docket No. 17] is **GRANTED**. It is further

ORDERED that plaintiffs' Amended Complaint [Docket No. 7] is **DISMISSED** with prejudice. It is further

ORDERED that, within 14 days of the entry of this order, defendant may have his costs by filing a Bill of Costs with the Clerk of the Court. It is further

ORDERED that this case is closed.

DATED September 23, 2019.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge